AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,
Respondent–Appellant,

v.

Kenneth D. WEMHOFF, Appellant–
Respondent.

Nos. WD 54070, WD 54117.

Missouri Court of Appeals,
Western District.

April 21, 1998.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 2, 1998.

Application for Transfer Denied
Aug. 25, 1998.

Randall P. Baker, Mexico, for Respon-
dent–Appellant.

William A. Atkinson, Columbia, for Appel-
lant–Respondent.

Before EDWIN H. SMITH, P.J., and
SMART and ELLIS, JJ.

EDWIN H. SMITH, Presiding Judge.

Kenneth D. Wemhoff appeals the declaratory judgment of the Circuit Court of Randolph County for American Family Mutual Insurance Company, respondent, declaring that neither his "Renter's" nor "Farm/Ranch" insurance policies, issued by the respondent, provided liability coverage for personal injuries sustained by his minor child, Faith Catherine Wemhoff (Faith), because she was excluded from coverage as an "insured" under both policies. The respondent cross-appeals as to the trial court's judgment finding that Faith, at the time she sustained her injuries, was not a "resident relative" of the appellant, such that she would be considered an excluded "insured" under the policies.

The appellant advances three points on appeal. In his first two points, he claims that the trial court erred in declaring that Faith's personal injuries were not covered under either his "Renter's" or "Farm/Ranch" policies because: (1) the policies' definitions of "insured" are ambiguous in that the word "care," as used in these definitions, is imprecise and susceptible to multiple meanings; and, (2) the policies' definitions of "insured" are ambiguous in that the phrase "any other person," as used in these definitions, is imprecise and susceptible to multiple meanings. In his third point, the appellant claims that the trial court erred in declaring that Faith's personal injuries were not covered by the "Renter's" policy in that they occurred off the "insured premises," which were excluded under the policy, because the policy did provide coverage for personal injuries, such as Faith's, which occurred away from the "insured premises," and were caused by an animal owned or in the care of the insured. We affirm.

**Facts**

Betty Denise Wemhoff, now Denise Orscheln, and Kenneth D. Wemhoff, appellant, were married on December 5, 1980. The marriage was dissolved by the Circuit Court of Randolph County by a decree of dissolution entered on October 4, 1989. Two children were born of the marriage, Ann Marie Wemhoff, born February 27, 1981, and Faith Catherine Wemhoff, born December 31, 1985. Pursuant to the decree, the two children were placed in the joint legal custody of their parents, with their mother receiving primary physical custody subject to the visitation rights of the appellant. The appellant exercised his visitation rights by seeing his daughters once per week, or every other week, and by them staying overnight with him, usually on Sunday.

The appellant resided in a three bedroom house, with one bedroom used as an office. One of the bedrooms was primarily used by Ann and Faith for their overnight stays. Faith kept no clothes or other personal belongings at the appellant's home. Her mother packed clothes, hygiene products, and toys for each of Faith's visits with her father. The appellant paid court-ordered child support for Faith to her mother and purchased presents for her on Christmas and her birthdays, but he took no responsibility for her education or medical care.

The appellant resided at 1107 S. Williams in Moberly, Missouri. From the effective dates of December 14, 1993, to December 14, 1994, he carried a "Renter's" policy of insurance, under which his residence was the primary "insured premises." The "Renter's" policy defined "insured" as "[y]ou and your relatives if residents of your household. It also means any other person under the age of 21 in your care or in the care of your resident relatives." It provided liability protection for which any insured is liable because of bodily injury caused by a covered occurrence. This policy provided no medical expense coverage for bodily injuries away from an insured premises when such injuries as "caused by the activities of the insured" or "by an animal owned by or in the care of any insured." The policy specifically excluded liability coverage for bodily injury or property damage, "to any insured, any relative of any insured who resides on the insured premises, or any employee of any insured other than domestic employees...." It also excluded liability coverage for bodily injury or property damage "[a]rising out of the ownership of or rental to any insured of any premises, other than the insured premise."

The appellant farmed land owned by his father in Randolph County, Missouri. From the effective dates of December 16, 1993, to December 16, 1994, the appellant carried a "Farm/Ranch" policy of insurance on this farm property. The "Farm/Ranch" policy defined insured as:

> [y]ou and if you are shown in the declaration as (1) an individual, insured also means your spouse and relatives if residents of your household. It also means any other person under the age of 21 in your care or in the care of your resident relatives.

Both the "Renter's" and "Farm/Ranch" policies excluded liability coverage for bodily injury and medical expense occasioned by injury to an "insured."

On Monday, August 8, 1994, after an overnight stay with the appellant, Faith accompanied him to the farm specifically covered in the "Farm/Ranch" insurance policy. The appellant and Faith were following the typical routine that they had established regarding weekend visitation and overnight stays. While at the farm, Faith was "hit, kicked, knocked down, and trampled" by a horse owned by the appellant. The appellant testified that he "supposed" the horse was a pet. On January 23, 1996, Faith's mother, acting as her next friend, filed a lawsuit in the Circuit Court of Randolph County seeking damages from the appellant for alleged negligent acts which led to Faith's injuries.

On March 12, 1996, the respondent filed a "Petition for Declaratory Judgment" seeking an order establishing that there was no insurance coverage under the "Renter's" or "Farm/Ranch" policies of insurance, in that Faith was an "insured" under both policies. On October 17, 1996, the cause was heard before the Circuit Court of Randolph County.

On February 7, 1997, the trial court entered its "Judgment and Order" and "Findings of Fact and Conclusions of Law," finding that neither policy of insurance provided coverage to the appellant for the injuries sustained by Faith. The trial court found that Faith was excluded from coverage under both policies because she was "under the age of 21 on August 8, 1994, and under the 'care' of her father, [the appellant], at the time of the alleged incident," and was, therefore, an "insured" under the terms of the policies. The court also found that no coverage was available under the "Renter's" policy because "the alleged accident occurred at a location other th[a]n 1107 S. Williams or any other premise described in the policy or at any other location enumerated or defined as an 'insured premise.'"

This appeal follows.

## Standard of Review

In a declaratory judgment action, the judgment entered by the trial court will be affirmed unless: (1) there is no substantial evidence to support it; (2) it is against the weight of the evidence; or, (3) it erroneously declares or applies the law. *Associated Industries of Mo. v. Angoff,* 937 S.W.2d 277, 282 (Mo.App.1996).

## Appellant's Appeal

### I.

In his first point, the appellant claims that the trial court erred in declaring that Faith's personal injuries were not covered under either his "Renter's" or "Farm/Ranch" policies issued by the respondent because the policies' definitions of "insured" are ambiguous in that the word "care," as used in these definitions, is imprecise and susceptible to multiple meanings. We disagree.

It is undisputed that both policies issued to the appellant excluded liability coverage for bodily injury and medical expense occasioned by an injury to an "insured." Thus, the policies provided coverage for Faith's personal injuries only if she was not an "insured" under the terms of either policy. In this regard, the "Renter's" policy defined "insured" as "[y]ou and your relatives if residents of your household. It also means any other person under the age of 21 *in your care or in the care of your resident relatives.*" (Emphasis added.) The "Farm/Ranch" policy defined "insured" as:

> [y]ou and if you are shown in the declaration as (1) an individual, insured also means your spouse and relatives if residents of your household. It also means any other person under the age of 21 *in*

*your care or in the care of your resident relatives.*

(Emphasis added.) Interpreting these definitions, the trial court found Faith to be an "insured" under both policies in that she was a person under the age of 21 in the appellant's "care" at the time of her injuries.

■ The key to the interpretation of an insurance policy is whether the policy language is ambiguous or unambiguous. *Haggard Hauling & Rigging Co. v. Stonewall Ins. Co.,* 852 S.W.2d 396, 399 (Mo.App.1993). Ambiguous provisions of an insurance policy will be construed against the insurer, but unambiguous provisions will be enforced as written. *Id.* "The language of an insurance policy is ambiguous when it is reasonably and fairly open to different constructions." *Chase Resorts, Inc. v. Safety Mut. Cas. Corp.,* 869 S.W.2d 145, 150 (Mo.App.1993). In this respect, "[a]mbiguity arises when there is duplicity, indistinctness or uncertainty of meaning." *Id.* However, "an ambiguous phrase is not considered in isolation, but by reading the policy as a whole with reference to the associated words." *Id.* As such, one must consider the language at issue in the context of the entire policy. *Sanders v. Wallace,* 884 S.W.2d 300, 303 (Mo.App.1994).

The issue for us to determine is whether the term "insured," as used in the policies issued to the appellant, is ambiguous based upon the appellant's claim that the term "care," as used in defining "insured," is reasonably and fairly open to different meanings. In making this determination, we must give the language used in the policies its plain and ordinary meaning. *Sanders,* 884 S.W.2d at 303; *Madison Block Pharmacy, Inc. v. U.S. Fidelity and Guaranty Co.,* 620 S.W.2d 343, 346 (Mo.banc 1981). In this respect, "the words must be given their plain meaning, consistent with the reasonable expectations, objectives, and intent of the parties." *Chase,* 869 S.W.2d at 150.

The appellant's contention that the term "care" is ambiguous, as used in the policies to define "insured," is premised upon his argument that "care" has not heretofore been judicially defined and is reasonably and fairly open to different meanings. The appellant is correct in his assertion that the "care" as used here has not been judicially defined. As such, we must determine whether it is ambiguous as used in the policies at issue here.

In support of his argument that "care" is reasonably and fairly open to different meanings, the appellant cites numerous and varying definitions for "care" from a number of sources, including THE AMERICAN HERITAGE DICTIONARY, BLACK'S LAW DICTIONARY, BALLENTINE'S, and the ALR INDEX TO ANNOTATIONS, 2d, 3d and 4th (1986). As an example, the appellant, in his brief, cites the following annotations from the ALR INDEX TO ANNOTATIONS containing the term "care": "Lifetime Care," "Medical Care and Treatment," and "Nursing and Convalescent Homes." From this source, the appellant claims that a possible definition of "care" could be the "actual, physical rendering of basic assistance" for "those unable to care for themselves," i.e., the mentally and physically incapacitated. Using this definition of "care," the appellant argues that Faith would not be an "insured" under the policies in question because she was able to care for herself. The appellant's argument is without merit.

■ The respondent claims that "care" as used in both policies is not ambiguous when interpreted in the overall context of the policies with respect to Faith. We agree. In construing an insurance policy, we need not apply every possible definition given in the dictionary for the disputed term. *Sanders,* 884 S.W.2d at 303. Rather, we simply must give the term its "plain meaning, consistent with the reasonable expectations, objectives and intent of the parties." *Id.* While the term "care" is a word of variable meaning, it can "usually be interpreted in the context" of its use. BALLENTINE'S at 175. Furthermore, "the policy must be reasonably construed in light of the specific situation with which the parties are dealing." *Chase,* 869 S.W.2d at 150.

■ The appellant contends that in determining whether "care" is ambiguous, as used in defining "insured" in the policies, we must look at whether it is ambiguous in the con-

text of determining the entire class of persons who would be excluded from coverage as insureds. This contention is without merit. In determining whether the term "care" is ambiguous as used in the policies, we are only required to determine what the parties intended at the time the policies were entered into as to that term when applied to the specific situation with which we are now confronted. *Id.*

The specific situation which presents itself here involves a minor child who was injured while on an overnight, court-ordered visitation with her father, the appellant. Given these circumstances, and recognizing "charge; protection; custody," WEBSTER'S NEW WORLD COLLEGE DICTIONARY, 3rd Ed., pg. 212, as a common definition of "care," Faith, at the time she sustained her injuries, clearly was in her father's "care," as the term is used in the policies. In this regard, we fail to see how there could have been any confusion at the time the policies were entered into as to what the term "care" meant in the context of whether Faith would be considered an "insured" when she stayed at the appellant's house on a court-ordered visitation. As such, we find that "care," as applied to Faith, was not ambiguous as used in the policies. Therefore, we find that the trial court did not err in finding that Faith was in the appellant's "care" and was an "insured," as the term is used in both policies, at the time she sustained her personal injuries, thereby excluding coverage for the same under both policies.

Point denied.

## II.

■ In his second point, the appellant claims that the trial court erred in declaring that Faith's personal injuries were not covered under either his "Renter's" or "Farm/Ranch" policies because the policies' definitions of "insured" were ambiguous in that the phrase, "any other person," as used in these definitions, is imprecise and susceptible to multiple meanings. We disagree.

As set forth, *supra,* the "Renter's" policy defined "insured" as "[y]ou and your relatives if residents of your household. It also means *any other person* under the age of 21

in your care or in the care of your resident relatives." (Emphasis added.) The "Farm/Ranch" policy defined "insured" as:

[y]ou and if you are shown in the declaration (1) an individual, insured also means your spouse and relatives if residents of your household. It also means *any other person* under the age of 21 in your care or in the care of your resident relatives.

(Emphasis added.) The appellant claims that it is unclear as to what the phrase "any other person" modifies. The appellant argues that if the phrase modifies "relatives," then because Faith is his daughter, she would not be "any other person," and thus, would not be an "insured." The respondent argues that the phrase "any other person" does not modify any particular term, but rather is used to connote a separate and additional class of insureds. We agree.

Applying the rules for construing insurance policies set forth in Point I, *supra,* we find the plain and ordinary meaning of the phrase "any other person" when read together with the remainder of the definition of "insured" is to simply describe another class of insureds in addition to the named insured on the policy, and the resident relatives of his or her household. As such, Faith would be an "insured" under both the "Renter's" and "Farm/Ranch" policies in that she was "any other person" under the age of twenty-one in the appellant's "care" at the time of her injury; and therefore, her injuries were excluded from coverage under both policies. Thus, the trial court did not err in finding that Faith was an excluded "insured" under the policies.

Point denied.

## III.

In his third point, the appellant claims that the trial court erred in declaring that Faith's personal injuries were not covered by the "Renter's" policy based upon its finding that her injuries occurred off the "insured premises," which were excluded under the policy, in that the policy did provide coverage for personal injuries which occurred away from the "insured premises" where the injuries were caused by an animal owned or in the care of the insured. In this regard, the appellant argues that because Faith's injuries were caused by his horse, they would be covered

under the "Renter's" policy, despite the fact that she incurred them away from the "insured premises." Because, as discussed, *supra*, "insureds" are excluded from coverage under the policies and Faith was an "insured" under both the "Renter's" and "Farm/Ranch" policies, her injuries would be excluded from coverage, regardless of where they occurred, the appellant's third point is rendered moot.

Point denied.

### Respondent's Cross–Appeal
### IV.

In its sole point on cross-appeal, the respondent claims that the trial court erred in finding that Faith was not a "resident relative" of the appellant, and as such, was not an excluded "insured" on that basis. Given our disposition of the appellant's appeal, *supra*, we need not address the respondent's cross-appeal.

### Conclusion

The declaratory judgment of the circuit court is affirmed.

All concur.