**Amber STRADER, Plaintiff–Respondent,**

v.

**PROGRESSIVE INSURANCE, Defendant–Appellant.**

No. 28044.

Missouri Court of Appeals, Southern District, Division Two.

July 31, 2007.

Motion for Rehearing and Transfer to Supreme Court Denied Aug. 22, 2007.

Application for Transfer Denied Sept. 25, 2007.

Jeffrey P. Hine, Cape Girardeau, for appellant.

Daniel Thomas Moore, Poplar Bluff, for respondent.

JEFFREY W. BATES, Chief Judge.

Progressive Preferred Insurance Company (Progressive) appeals from a judgment requiring it to pay a claim for collision coverage submitted by its insured, Amber Strader (Strader). Progressive had denied the claim based on a policy exclusion. After a bench trial, the court decided the exclusion was ambiguous. On appeal, Progressive contends this decision was erroneous because the policy exclusion was not ambiguous and should have been applied as written to preclude coverage for Strader's claim. This Court agrees. Consequently, the judgment is reversed, and the case is remanded with directions to enter a judgment for Progressive.

In this court-tried case, we must affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. Rule 84.13(d); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Bacon v. Uhl*, 173 S.W.3d 390, 396 (Mo.App.2005).[1] The case was tried below on stipulated facts. The only issue was the applicability of the exclusion upon which Progressive relied. The facts are not in dispute, and we are only concerned with whether the

---

**1.** All references to rules are to Missouri Court Rules (2007). *Murphy* interpreted the provisions of former Rule 73.01(c). The provisions of that rule were transferred, in essentially the same form, to Rule 84.13(d) effective January 1, 2000.

trial court properly interpreted and applied the insurance contract. On appeal, we do not defer to the trial court's determination of that question of law. *Auto. Club Inter–Ins. Exch. v. Medrano*, 83 S.W.3d 632, 637 (Mo.App.2002). Instead, our standard of review is *de novo. Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007); *Bickerton, Inc. v. Am. States Ins. Co.*, 898 S.W.2d 595, 601 (Mo. App.1995). The instant controversy arose from the following facts.

In July 2005, Strader was employed by the post office as a rural mail carrier. Progressive issued a policy of personal automobile insurance to Strader that was effective from October 26, 2005, to April 26, 2006. After the policy term commenced, Strader purchased a 2002 GMC Sonoma. When she called her insurance agent to have the Sonoma added to the policy, Strader described it as "a work vehicle." Strader intended to use it for business purposes as a mail delivery vehicle and for her personal automotive needs, such as traveling back and forth to school, carrying groceries, etc. The Sonoma was added to the list of vehicles described in the policy declarations and insured for collision coverage in Part IV of the policy. This coverage part contained the following language:

> *EXCLUSIONS*—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART IV. Coverage under this Part IV does not apply for loss: 1. to a **covered vehicle, non-owned vehicle, temporary substitute vehicle,** or **trailer,** while being used to carry persons or property for compensation or a fee, including, but not limited to, delivery of magazines, newspapers, food, or any other products. This exclusion does not apply to shared-expense car pools. . . .

The Sonoma was a "covered vehicle" within the meaning of this exclusion because, by policy definition, that phrase included any vehicle shown on the Declarations page.

On November 25, 2005, Strader was using the Sonoma to deliver the mail on her rural mail route. As she was driving on a gravel road, a deer ran out in front of the vehicle. When Strader swerved to miss the deer, the Sonoma ran off the left side of the road. It went down a steep drop and collided with some trees and boulders. After the accident, the mail that Strader had been carrying in the Sonoma was loaded into another vehicle so it could be delivered.

Due to the damage sustained in the collision, the Sonoma was a total loss. Its value at that time was $15,875. Strader made a claim under the collision coverage of her policy, but Progressive denied the claim based upon the aforementioned exclusion. Strader filed suit against Progressive, and the parties stipulated to the relevant facts. The only issue was whether the exclusion barred coverage. The trial court ruled in Strader's favor for the following reasons:

> The Court finds that the language contained in the exclusion is ambiguous to the extent that it does not specifically include the use of an automobile to perform the services of a rural mail carrier. The Court specifically finds that the vehicle was not being used to carry or transport property for compensation or a fee, as that definition would more closely fit a vehicle being used to deliver goods or property in which a specific remuneration was paid for each delivery and the Court notes that the examples used by the insurance company, i.e., delivery of magazines, newspapers or food, all deal with the ultimate receiver of the magazines, newspapers or food paying a

price to the driver for the delivery and that the prices would vary depending upon what was delivered, whereas in the case at bar, the persons receiving the mail do not pay any fee whatsoever and specifically do not pay any fee or compensation to the rural mail carriers, such as [Strader].

The trial court entered judgment for Strader in the amount of $15,875, plus interest and costs. This appeal followed.

■ Because Progressive was relying upon an exclusion in the policy to deny collision coverage, it bore the burden of proving facts that made the exclusion applicable. *Shelter Mut. Ins. Co. v. Ballew*, 203 S.W.3d 789, 792 (Mo.App.2006); *Bowan ex rel. Bowan v. Gen. Sec. Indemn. Co. of Ariz.*, 174 S.W.3d 1, 5 (Mo.App.2005). The stipulated facts established that, when the collision occurred, Strader was carrying mail in her vehicle that she was being paid to deliver pursuant to her employment by the Post Office as a rural mail carrier. Progressive argues that these facts invoke the exclusion because it prohibits collision coverage while a covered vehicle is "being used to carry . . . property for compensation or a fee. . . ." Strader argues that the exclusion should not be applied to bar coverage because it is ambiguous.

■ The mere fact that Progressive and Strader disagree about the meaning of the exclusion does not make it ambiguous. *H.K. Porter Co., Inc. v. Transit Cas. Co. in Receivership*, 215 S.W.3d 134, 145 (Mo. App.2006); *Jackson County v. McClain Enter., Inc.*, 190 S.W.3d 633, 640 (Mo.App. 2006). An ambiguity exists when there is uncertainty, indistinctness or duplicity in the meaning of the policy. *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007); *Poage v. State Farm Fire & Cas. Co.*, 203 S.W.3d 781, 783–84 (Mo.App. 2006). If the language used is reasonably open to different interpretations, it is am-

biguous. *Seeck*, 212 S.W.3d at 132. In making that determination, we apply the meaning which would be attached to those terms by an ordinary person of average understanding who purchased the insurance. *McCormack Baron Mgmt. Serv., Inc. v. Am. Guar. & Liab. Ins. Co.*, 989 S.W.2d 168, 171 (Mo. banc 1999). To ascertain the common meaning of a term, a court may look to a dictionary definition. *Martin v. U.S. Fidelity and Guar. Co.*, 996 S.W.2d 506, 508 (Mo. banc 1999); *Shelter Mut. Ins. Co. v. Ballew*, 203 S.W.3d 789, 794–95 (Mo.App.2006); *Auto Owners (Mut.) Ins. Co. v. Sugar Creek Mem'l Post No. 3976*, 123 S.W.3d 183, 190 (Mo.App. 2003); *King v. Cont'l Western Ins. Co.*, 123 S.W.3d 259, 265 (Mo.App.2003). A word with more than one dictionary meaning is not necessarily ambiguous if the court concludes that, in context, only one meaning that comports with the parties' objectively reasonable expectations is applicable. *Auto Owners*, 123 S.W.3d at 188; *King*, 123 S.W.3d at 265; *Am. Family Mut. Ins. Co. v. Wemhoff*, 972 S.W.2d 402, 405–06 (Mo.App.1998). Furthermore, whether a term is ambiguous is determined in light of the specific factual situation before the court. *Am. Family*, 972 S.W.2d at 406.

■ Ambiguous language is construed against the insurer. *Martin*, 996 S.W.2d at 508. Unambiguous language is enforced as written, absent a public policy exception to the contrary. *Mansion Hills Condo. Ass'n v. Am. Family Mut. Ins. Co.*, 62 S.W.3d 633, 637 (Mo.App.2001). "A court is not permitted to create an ambiguity in order to distort the language of an unambiguous policy, or, in order to enforce a particular construction which it might feel is more appropriate." *Rodriguez v. Gen. Acc. Ins. Co. of America*, 808 S.W.2d 379, 382 (Mo. banc 1991).

The relevant terms of the exclusion are: (1) loss to a covered vehicle; (2) while

being used to carry; (3) property; (4) for compensation or a fee. It is undisputed that the Sonoma was totaled while Strader was carrying mail inside the vehicle that she was being paid to deliver as a rural mail carrier. For the reasons that follow, we believe a person of reasonable intelligence who bought a Progressive policy would understand that these facts come within the terms of the exclusion.

The first element of the exclusion is not in dispute. The parties agree that the Sonoma was damaged in the collision. It qualified as a "covered vehicle" because it was listed in the policy declarations.

The second element of the exclusion involves the phrase, "while being used to carry." In the context at issue here, "carry" means "to move while supporting (as in a vehicle or in one's hands or arms)" or "to convey or transport[.]" WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 343 (1976); BLACK'S LAW DICTIONARY 227 (8th ed.2004). This element was met because the Sonoma was being used to carry mail when the collision occurred.

The third element involves the term, "property." This word has been defined to mean "[a]ny external thing over which the rights of possession, use and enjoyment are exercised[.]" BLACK'S LAW DICTIONARY 1252 (8th ed.2004). Mail certainly falls within that definition. Furthermore, so long as mail is in the possession of the United States Postal Service, it is government property. *See Searight v. Stokes,* 44 U.S. 151, 169, 3 How. 151, 11 L.Ed. 537 (1845); *In re Debs,* 158 U.S. 564, 583–84, 15 S.Ct. 900, 39 L.Ed. 1092 (1895); *U.S. v. Maxwell,* 137 F.Supp. 298, 301–02 (W.D.Mo.1955). A reasonable person would so understand, particularly because stealing mail is a federal crime. *See* 18 U.S.C. § 1708 (governing theft of mail generally); 18 U.S.C. § 2114 (making assault on a person having lawful charge, custody or control of "mail matter, or of

any money or other property of the United States" with the intent to steal same a federal offense). Thus, the Sonoma sustained damage while it was being used to carry property, in the form of mail.

The final element of the exclusion involves the phrase "for compensation or a fee." Compensation means "payment for value received or service rendered: REMUNERATION < the ˜of U.S. government employees>" or "Remuneration and other benefits received in return for services rendered, esp. salary or wages." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 463 (1976); BLACK'S LAW DICTIONARY 301 (8th ed.2004). Fee means "a sum paid or charged for a service[,]" "WAGES; *esp:* those of a servant" or "[a] charge for labor or services, esp. professional services." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY, 459 (11th ed.2005); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 833 (1976); BLACK'S LAW DICTIONARY 647 (8th ed.2004). It is undisputed that Strader was being paid by her employer to deliver the mail. Additionally, a person sending mail is required to pay a postage fee to the United States Postal Service for that delivery service.

In our view, the exclusion in Progressive's policy clearly and unambiguously bars Strader's claim under the collision coverage of her policy. We believe this conclusion is sustained by the following authorities.

In *Progressive Universal Ins. Co. of Ill. v. Liberty Mut. Fire Ins. Co.,* 347 Ill. App.3d 411, 282 Ill.Dec. 636, 806 N.E.2d 1224 (2004), Ronald Abbinante was employed to deliver pizzas for a restaurant. He was paid $1.25 for each delivery by his employer, Casale Pizza. Abbinante was using his mother's automobile to deliver pizzas when he hit a pedestrian. The pedestrian was insured by Liberty Mutual. The mother's vehicle was insured by Pro-

gressive, and the liability coverage contained an exclusion identical to the one at issue here. When Abbinante was sued, Progressive denied coverage and declined to defend. In an ensuing declaratory judgment action, Progressive obtained a summary judgment upholding its denial of coverage. *Id.* at 1225–26. On appeal, Liberty Mutual argued that the exclusion was ambiguous and, in any event, violated public policy. With respect to the first issue, the Illinois Court of Appeals held that the exclusion was not ambiguous because it applied to deliveries made for compensation or a fee:

> [T]he parties do not dispute that [Abbinante] was delivering pizzas when the accident occurred, nor do they dispute that Casale Pizza paid him $1.25 for each pizza that he delivered. Clearly, [Abbinante] was delivering food when the accident took place, and the $1.25 he received for each delivery was either a fee or compensation. Therefore, we hold that, as applied to the facts in this case, the exclusion is not ambiguous.

*Id.* at 1227.[2]

In *Amerisure Ins. Co. v. Graff Chevrolet, Inc.*, 257 Mich.App. 585, 669 N.W.2d 304 (2003), Threehouse worked at a restaurant delivering pizzas. *Id.* at 306. He was paid minimum wage and was not reimbursed for his mileage, but he did receive tips. *Id.* at 310. He used his fiance's rental car for deliveries. *Id.* at 306. There was no insurance coverage if the car was used to "carry passengers or property for consideration, express or implied." *Id.* at 308–09. While making a delivery, Threehouse collided with another car. After a

settlement with the injured party, a suit was brought to determine coverage. One of the issues in that case was whether the coverage exclusion was ambiguous. The trial court ruled that it was unambiguous. *Id.* at 308. The Michigan Court of Appeals affirmed that decision. First, the appellate court rejected the argument that Threehouse did not carry property for consideration because he was only paid wages for the work he did and did not receive a special wage or mileage for carrying pizza. *Id.* at 310. The court concluded that the term, "consideration" had an ordinary meaning that was readily understandable to people of ordinary intelligence. *Id.* "In our view, because Threehouse was hired for the purpose of delivering pizzas, his transportation of those pizzas was for consideration." *Id.* The court also noted, and we agree, that "[i]t is reasonable to conclude that a commercial vehicle would command a higher insurance premium because it would likely accumulate more mileage and be used in circumstances more likely to result in accidents." *Id.*[3]

In *U.S. v. Milwaukee Guardian Ins. Co.*, 966 F.2d 1246 (8th Cir.1992), the United States sought indemnity from an insurance company after a postal service employee was involved in an automobile collision. The employee, Goltz, was delivering mail on a rural route when his privately-owned vehicle collided with another car. In the collision, one of the occupants of the other car was killed and another was injured. Federal tort claims were brought against the government, which in turn brought a third-party indemnity ac-

---

**2.** With respect to the second issue, the appellate court held that the exclusion was unenforceable because it violated public policy. *Id.* at 1228. In *Progressive Universal Ins. Co. of Ill. v. Liberty Mut. Fire Ins. Co.*, 215 Ill.2d 121, 293 Ill.Dec. 677, 828 N.E.2d 1175 (2005), the Illinois Supreme Court held that the exclusion did not violate public policy and

reinstated the summary judgment in Progressive's favor. *Id.* at 1186.

**3.** The decision was reversed in part on grounds not relevant here by *Amerisure Ins. Co. v. Graff Chevrolet, Inc.*, 469 Mich. 1003, 674 N.W.2d 379 (Table)(2004).

tion against Goltz's insurer, Milwaukee. The insurer denied coverage because its policy contained a provision that excluded coverage "when a vehicle is used to carry persons or property for a charge." At the time of the accident, Goltz had been delivering telephone books as an employee of the postal service. The postal service received a fee for this service. Goltz received a salary and reimbursement for mileage on his personal vehicle. The District Court granted summary judgment for Milwaukee. *Id.* at 1246. On appeal, the government argued that the exclusion was ambiguous because the term "charge" could either apply to the charge for postage received by the post office for the delivery or to payment of Goltz's salary and mileage to deliver the mail. The Eighth Circuit held that, under the facts presented, the exclusion barred coverage:

> The postal service ... is paid a fee by whoever uses its delivery service. The fee paid covers the costs of delivery of the mailed material. The postal employee, here a rural mail carrier, carries out the deliveries. The employee is not divorced from, but is a part of, the postal service. Clearly, the employee is carrying property for a charge. Thus, the policy clause in question applies to exclude insurance coverage for the accident arising out of the use of Goltz's vehicle to deliver mail.

(footnote omitted). *Id.* at 1247.

Finally, in *Almendral v. Sec. Nat'l Ins. Co.*, 704 So.2d 728 (Fla.App.1998), Valdes was employed by a transportation company to take Medicaid patients and their companions to doctors' appointments. Valdes used his private vehicle for that purpose, and he was paid weekly by his employer. Valdes' insurance policy with Security National excluded uninsured motorist coverage for bodily injury sustained by any person while occupying a covered vehicle "when it is being used to carry persons or property for a fee. This exclu-

sion [ ] does not apply to a share-the-expense car pool." *Id.* at 728. Mr. and Mrs. Almendral were being transported by Valdes in his vehicle when he was involved in an automobile accident with an uninsured motorist. Both of the Almendrals were injured. Valdes had been taking Mrs. Almendral to a doctor's appointment. Mr. Almendral was simply accompanying his wife to the doctor and had paid nothing in order to ride with Valdes. *Id.* at 729. Security National denied uninsured motorist coverage based on the exclusion, and the Almendrals sought declaratory relief. The trial court entered judgment for the insurer based on the language of the exclusion. On appeal, the Almendrals contended that the exclusion did not apply to Mr. Almendral. The Florida Court of Appeals found that argument unpersuasive:

> The appellants next assert that even if the business exclusion in the policy is valid, it was completely inapplicable to appellant, Enrique Almendral, where he was not a fare paying passenger or medicaid patient in the insured vehicle at the time of the accident. We find no merit to this argument. By the clear and unambiguous terms of the business exclusionary provision, except for car pool expenses, Valdes had no uninsured motorist coverage whenever his van was being used to transport any persons or property for a fee. The identity of the person(s) paying the fee or the status of the occupants in the van at the time are simply irrelevant.

*Id.* at 729–30.

Based upon the plain and unambiguous language of the exclusion in Progressive's policy, Strader had no collision coverage for the accident. The Sonoma was damaged while it was being used to carry mail, which is "property" as that term is commonly understood. Strader was a postal employee and was being paid to deliver the

mail. For the mail to be delivered, the sender also had to pay a postage fee to the United States Postal Service. An average person purchasing insurance would understand the word "compensation" to include wages or salary and the word "fee" to include the payment of postage for mail delivery. As the foregoing cases illustrate, the fact that the recipients of the mail did not pay anything directly to Strader is irrelevant.

In sum, Progressive proved that a loss to a covered vehicle occurred while the vehicle was being used to carry property for compensation or a fee. The exclusion is not ambiguous and must be applied as written. The judgment is reversed. The case is remanded with directions to enter judgment for Progressive.

GARRISON and BARNEY, JJ., Concurs.